**Opinion issued June 18, 2026.**



In the

# Court of Appeals

for the

# First District of Texas

———————————

## NO. 01-24-00901-CV

———————————

**JANELLE ALEXIS FLATT, Appellant**

**v.**

**RYANN TORNOW, Appellee**

---

**On Appeal from the 80th District Court**
**Harris County, Texas**
**Trial Court Case No. 2024-34899**

---

## OPINION

Appellee Ryann Tornow sent intimate photos of herself to the then husband of appellant Janelle Alexis Flatt. Following Flatt's alleged disclosure of those photos to third parties, Tornow sued Flatt and alleged public disclosure of private facts, intrusion on seclusion, and unlawful disclosure of intimate visual material. Flatt filed

a motion to dismiss Tornow's suit under the Texas Citizens Participation Act (TCPA). *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001-.011. The trial court denied Flatt's motion by operation of law, and Flatt filed a notice of appeal.

On appeal, Flatt contends that: (1) Tornow's suit is in response to Flatt's exercise of the rights to petition and of free speech, and thus, the TCPA applies; (2) Tornow failed to establish, by clear and specific evidence, a prima facie case for each essential element of each of her claims; and (3) notwithstanding Tornow's failure to prove a prima facie case, Flatt is entitled to judgment as a matter of law because she can conclusively negate an essential element of each of Tornow's claims. Because we conclude that Tornow's claims are not based on or in response to Flatt's exercise of any right that the TCPA protects, we affirm the denial of Flatt's motion to dismiss.

**Background**

Sometime in 2023, Flatt and her husband, Rhett Kenagy-Balan, entered divorce proceedings, in which Flatt sought and eventually secured Tornow's deposition. On June 3, 2024, before sitting for her deposition but after receiving a subpoena, Tornow filed suit against Flatt, alleging public disclosure of private facts, intrusion on seclusion, and unlawful disclosure of intimate visual material. In her petition, Tornow alleged that Flatt violated Tornow's privacy by accessing her "private personal communications." Tornow further alleged that Flatt "disclosed

intimate visual material depicting [Tornow] to several persons." Tornow's claim for public disclosure of private facts is predicated on the allegation that Flatt "publicized information about" Tornow's "private life." For intrusion on seclusion, Tornow alleged that Flatt "viewed and disclosed" Tornow's "intimate relationship and intimate visual material to persons within the community." With respect to her final claim for unlawful disclosure of intimate visual material, Tornow alleged that Flatt "unlawfully disclosed intimate visual material depicting" Tornow.

On September 13, 2024, Flatt filed a motion to dismiss under the TCPA.[1] Flatt filed a notice that her motion would be heard by submission on October 14, 2024. The trial court never ruled on Flatt's motion and, by operation of law, the motion was denied. TEX. CIV. PRAC. & REM. CODE §§ 27.005(a), 27.008(a). On November 14, 2024, Flatt timely filed her notice of appeal.

---

[1]     On July 25, 2024, Flatt filed a waiver of service "effective July 15, 2024." Whether the "date of service" is July 15 or July 25, 2024, Flatt's TCPA motion is timely. TEX. CIV. PRAC. & REM. CODE § 27.003(b) (requiring TCPA motion to be filed by 60th day "after the date of service of the legal action," absent agreement or court order). Although Tornow filed an amended petition after Flatt filed her TCPA motion, the amended petition "asserts the same legal claims" against Flatt "based on the same essential factual allegations" as the original petition. *Montelongo v. Abrea*, 622 S.W.3d 290, 296-98 (Tex. 2021). Because of that, the amended pleading does not constitute a new legal action under the TCPA and does not restart the 60-day clock. *Id.* For the same reason, the filing of an amended pleading does not render a TCPA motion moot, and we do not dispose of the appeal on that basis. *Buckingham Senior Living Cmty., Inc. v. Washington*, 605 S.W.3d 800, 807 n.4 (Tex. App.—Houston [1st Dist.] 2020, no pet.).

## Applicability of TCPA

The legislature enacted the TCPA "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002; *see McLane Champions, LLC v. Hou. Baseball Partners LLC*, 671 S.W.3d 907, 913-14 (Tex. 2023) (recognizing purpose of TCPA). To accomplish this purpose, the statute permits a party to file an early motion to dismiss, subject to interlocutory review. *McLane Champions*, 671 S.W.3d at 914. We review de novo a trial court's denial of a TCPA motion to dismiss. *Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 470 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd) (en banc) (citing *Better Bus. Bureau of Metro. Hou. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 353 (Tex. App.—Houston [1st Dist.] 2013, pet. denied)). As an initial matter, a movant must demonstrate that the TCPA applies to the legal action she seeks to dismiss. *McLane Champions*, 671 S.W.3d at 914. She must demonstrate that the legal action "is based on or is in response to" a protected right and, therefore, subject to dismissal. TEX. CIV. PRAC. & REM. CODE § 27.005(b). If the movant cannot satisfy her initial burden, we need go no further and may affirm denial of the TCPA motion on that basis. *McLane Champions*, 671 S.W.3d at 914, 920 (concluding that TCPA does not apply

4

under first step and ending analysis); *Wayne Dolcefino & Dolcefino Commc'ns, LLC v. Cypress Creek EMS*, 540 S.W.3d 194, 202 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (same).

In her first issue, Flatt contends that the TCPA applies to Tornow's entire suit because each claim is based on or in response to Flatt's exercise of the right to petition, her exercise of the right of free speech, or both. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(b) (setting forth bases for dismissal under TCPA). Flatt argues that Tornow's suit is in response to Flatt's issuing subpoenas in the divorce between her and her ex-husband, Kenagy-Balan. She also argues that she "has a right to speak freely about her marriage, which is a public institution recognized by the Texas Constitution, the tragedy of her husband's affair with Tornow, and to share proof of the affair (including messages that included Tornow's nude photos to Flatt's husband and their family devices)." Tornow did not file an appellee's brief; however, in the trial court, she argued that her suit is not based on or in response to Flatt's issuance of subpoenas in Flatt's divorce proceeding. She also argued that Flatt's alleged disclosure of nude photos of Tornow is a private dispute that has no connection with any matter of public concern.

## A.    Right to Petition

A legal action is subject to dismissal under the TCPA if it "is based on or is in response to . . . the party's exercise of . . . the right to petition." TEX. CIV. PRAC.

5

& REM. CODE § 27.005(b)(1)(B). As relevant here, the "exercise of the right to petition" includes "a communication in or pertaining to . . . a judicial proceeding." *Id.* § 27.001(4)(A)(i). The TCPA defines "communication" to "include[] the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1).

Flatt contends that Tornow's suit is "in response to" Flatt's actions in her divorce proceeding, including issuing subpoenas to Tornow and taking Tornow's deposition. The subpoenas are communications "in or pertaining to . . . a judicial proceeding," namely, Flatt's divorce proceeding. *See James v. Calkins*, 446 S.W.3d 135, 147 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (concluding that "pleadings" are communications in or pertaining to judicial proceeding), *abrogated on other grounds by Montelongo v. Abrea*, 622 S.W.3d 290 (Tex. 2021).

Flatt must also demonstrate that Tornow's legal action is in response to those communications. Flatt argues that the suit is "in response to" Flatt's actions in the divorce proceeding because Tornow's suit came shortly after those actions. Flatt relies on the proposition that a legal action is "in response to" a protected communication—such as a communication in or pertaining to a judicial proceeding—when that legal action "react[s] to or [is] asserted subsequently to" the protected communication. *Cavin v. Abbott*, 545 S.W.3d 47, 69 (Tex. App.—Austin

2017, no pet.). To support her argument, Flatt relies on the following sequence of events:

- On February 16, 2023, Tornow, according to her affidavit, learned that Flatt "had sent highly offensive photographs" of Tornow "to various friends and family."

- On April 9, 2024, more than a year later, Tornow was served with a subpoena compelling her deposition in the divorce proceeding between Flatt and her then husband.

- On April 23, 2024, Tornow was served with another subpoena compelling her deposition.

- On April 26, 2024, Tornow filed a motion to quash the subpoena in the divorce proceeding.

- On June 3, 2024, Tornow filed suit against Flatt.

Flatt emphasizes the close timing between Tornow's filing suit and service of the subpoenas coupled with the fact that Tornow waited more than a year to file suit after she claims to have discovered the allegations at the heart of her claims. Flatt argues that this timeline compels the conclusion that Tornow's suit is in response to Flatt's subpoenas in the divorce proceedings.

We have previously held that a TCPA movant "will not satisfy her burden to demonstrate applicability of the TCPA" by "simply alleging *post hoc ergo propter hoc*." *Pierce v. Brock*, No. 01-18-00954-CV, 2019 WL 3418511, at *5 (Tex. App.—Houston [1st Dist.] July 30, 2019, no pet.) (mem. op.); *see Post Hoc Ergo Propter Hoc*, BLACK'S LAW DICTIONARY (12th ed. 2024) (translating phrase from Latin as "after this, therefore resulting from it"). In *Pierce*, the TCPA movant contended that

7

the legal action was filed "in response to" the movant's filing of another suit. 2019 WL 3418511, at *5. In support of her argument, she pointed to only the fact that the legal action "was asserted subsequently in time." *Id.* We rejected that argument, and our sister courts of appeals have rejected similar arguments. *See, e.g.*, *DOJO Bayhouse, LLC v. Pickford*, No. 14-20-00237-CV, 2021 WL 6050677, at *5 (Tex. App.—Houston [14th Dist.] Dec. 21, 2021, no pet.) (mem. op.) (rejecting argument that suit was "in response to" action "simply because" suit was "later-filed"); *Cook v. Kyser*, No. 05-19-00311-CV, 2019 WL 5884429, at *4 (Tex. App.—Dallas Nov. 12, 2019, pet. denied) (mem. op.) (rejecting argument that legal action could be "in response to" exercise of protected rights where those activities were not the "factual predicate" of the claims (citation modified)); *Beving v. Beadles*, 563 S.W.3d 399, 408 (Tex. App.—Fort Worth 2018, pet. denied) (rejecting "in response to" argument based solely on timing of suit); *see also Browning Fam. Min. P'ship v. Callahan Draw LLC*, No. 08-24-00399-CV, 2025 WL 2972414, at *6 (Tex. App.—El Paso Oct. 21, 2025, no pet.) (mem. op.) (rejecting argument that legal action was "in response to" prior suit because legal action would not have been filed but for prior suit).

Nonetheless, Flatt maintains that a legal action is in response to a protected communication when that action is asserted subsequently to the protected communication. Flatt principally relies on *Cavin*, 545 S.W.3d 47, and *Yu v. Koo*,

633 S.W.3d 712 (Tex. App.—El Paso 2021, no pet.). In *Cavin*, a couple filed suit against the wife's parents following the parents' "overarching campaign of harassment" directed at the couple. 545 S.W.3d at 69. In effecting their "campaign of harassment," the parents exercised their rights of free speech and to petition. *Id.* The Austin court of appeals held that the couple's claims were in response to the exercise of those rights "in the sense that they reacted to or were asserted subsequently to [the parents'] ongoing communications regarding mental health or 'abuse' and their lawsuits and subpoenas." *Id.* In reaching this conclusion, the court of appeals explicitly noted that the parents' protected communications were not the factual predicate of some of the couple's claims. *Id.* at 68. Yet, the court of appeals found the TCPA applied to those claims because they were a reaction to or temporally followed the parents' protected communications. *Id.* at 68-69. Similarly, in *Yu*, the El Paso court of appeals held an amended petition was filed in response to the defendant's TCPA motion—an exercise of the defendant's right to petition—solely based on "the timing of the amended petition's filing," notwithstanding that the alleged acts underpinning the amended petition's claims occurred *before* the TCPA motion. 633 S.W.3d at 726-27 ("This type of reactionary filing implicates the TCPA, regardless of whether the newly-asserted claims are valid.").

We respectfully disagree with the holdings of *Cavin* and *Yu* that a legal action is in response to the exercise of a protected right simply because the legal action

temporally followed the exercise of that right. Those holdings run contrary to this Court's precedents. *See, e.g.*, *Cweren v. Eureka Multifamily Group, L.P.*, No. 01-21-00470-CV, 2023 WL 2977755, at *16 (Tex. App.—Houston [1st Dist.] Apr. 18, 2023, pet. denied) (mem. op.) (affirming denial of TCPA motion and noting that parties' involvement in prior county court suit "does not mean that every subsequent action after the county court suit results in litigation that is based on or in response to the county court suit"); *Tiedjop v. Volleyball Sch. LLC*, No. 01-22-00097-CV, 2023 WL 2602776, at *4 (Tex. App.—Houston [1st Dist.] Mar. 23, 2023, no pet.) (mem. op.) (rejecting argument that legal action was in response to party's earlier pleading solely on basis that claim was asserted subsequently in time); *Marrujo v. Wisenbaker Builder Servs., Inc.*, No. 01-19-00056-CV, 2020 WL 7062318, at *9-10 (Tex. App.—Houston [1st Dist.] Dec. 3, 2020, no pet.) (mem. op.) (rejecting argument that "underlying lawsuit must have been filed in response to the [prior] lawsuit simply because it was asserted subsequent in time"); *Pierce*, 2019 WL 3418511, at *5 (same); *Pierce v. Stocks*, No. 01-18-00990-CV, 2019 WL 3418513, at *5 (Tex. App.—Houston [1st Dist.] July 30, 2019, no pet.) (mem. op.) (same). On this record, we conclude that Flatt has not met her burden to demonstrate that Tornow's claims are based on or in response to Flatt's exercise of the right to petition.

## B. Right of Free Speech

A legal action is subject to dismissal under the TCPA if it "is based on or is in response to . . . the party's exercise of . . . the right of free speech." TEX. CIV. PRAC. & REM. CODE § 27.005(b)(1)(A). The "exercise of the right of free speech" means "a communication made in connection with a matter of public concern," which is defined as "a statement or activity regarding . . . a public official[;] . . . a matter of political, social, or other interest to the community; or . . . a subject of concern to the public." *Id.* § 27.001(3), (7). As previously mentioned, the TCPA defines "communication" to "include[] the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1).

As an initial matter, we must determine what are the alleged "communications" by Flatt on which Flatt contends Tornow's suit is based. Flatt denies that she disclosed any photos or messages that Tornow sent to Flatt's then husband other than one message that Flatt admits she sent to Tornow, which included one of Tornow's nude photos.[2] Flatt's denial does not sink her motion. A legal action may still be subject to dismissal under the TCPA even if the movant denies making the communications on which the legal action is based. *See Hersh v. Tatum*, 526

---

[2] Flatt does not appear to argue that Tornow's suit is based on or in response to this text message. Additionally, nothing in Tornow's petition or her response to Flatt's TCPA motion suggests that that text message is the basis of any of her claims.

S.W.3d 462, 466-68 (Tex. 2017) (holding that legal action was based on defendant's exercise of free speech under TCPA based on plaintiff's allegations, even though defendant denied allegations). However, unlike the plaintiff's petition in *Hersh*, Tornow's petition does not describe the content of Flatt's alleged communications. Rather, the petition merely alleges that Flatt "disclosed intimate visual material depicting" Tornow and "publicized information about" Tornow's "private life."

We are not limited to Tornow's petition. In considering a TCPA motion, the statute requires that we consider the pleadings, evidence a court could consider under rule 166a of the Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based. TEX. CIV. PRAC. & REM. CODE § 27.006(a). In responding to Flatt's TCPA motion, Tornow acknowledges that the "intimate visual material" alleged in her petition consists of nude photos of herself. In an affidavit attached to her response, Tornow stated that, to the best of her knowledge, Flatt "had sent highly offensive photographs of [Tornow] to various friends and family," including Michael Middleton and Gavin Sweeny, who, according to Flatt, are Flatt's pastor and the CFO of one of Kenagy-Balan's companies, respectively. Tornow also attached an exhibit depicting a message allegedly sent by Flatt from a social media account named "home_wreckerwatchout." The message—depicted in the image below—reads: "You should probably find a new job & watch every move you make from this point

12

forward. Have a good night [Face Blowing a Kiss emoji][.]" Neither the exhibit depicting the message nor Tornow's pleadings suggest to whom the message was sent. According to Tornow, the account's profile picture is a photo of Tornow.



As for any text messages that Tornow sent to Kenagy-Balan that Flatt allegedly disclosed, no pleading, affidavit, or other evidence describes the content of those communications. As the movant, Flatt bears the burden of describing the communications on which she claims Tornow's legal action is based. *Mattress Firm, Inc. v. Deitch*, 612 S.W.3d 467, 487-88 (Tex. App.—Houston [1st Dist.] 2020, pet. denied). Without any pleading or evidence describing the communications' content, we are unable to determine whether those communications were "made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE § 27.001(3); *see Cook*, 2019 WL 5884429, at *3 (noting that court could not determine whether suit was "in response to" protected communication without pleading or evidence of alleged communication's content). Accordingly, the only communications demonstrated by the pleadings or evidence are the social media message and the alleged disclosures by Flatt of nude photos of Tornow to third

13

parties that include the CFO of one of Kenagy-Balan's companies and Flatt and Tornow's pastor. *See* TEX. CIV. PRAC. & REM. CODE § 27.001(1) (defining "communication" to include "visual" media).

## 1. Photographs

Flatt contends that any disclosure by her of Tornow's photos is a communication made in connection with a matter of public concern. She argues that attacks on the institution of marriage, including adultery, are matters of public concern, and any disclosure is a communication made in connection with those matters. The Texas Supreme Court has cautioned against a construction of "matter of public concern" that would include "matters of purely private concern" when the TCPA's text does not permit such an interpretation. *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 135 (Tex. 2019). While the legislature is "free to define 'matter of public concern' to include matters of purely private concern," nothing in the current version of the statute suggests that it applies to purely private matters. *Id.* at 134. Under the TCPA, a matter is one of public concern when it regards a *public* official or figure, a person who has drawn substantial *public* attention, a matter of interest to the *community*, or other subject of concern to the *public*. TEX. CIV. PRAC. & REM. CODE § 27.001(7).

Any disclosure by Flatt of Tornow's nude photographs is a "purely private concern." Contrary to Flatt's assertions, she is not alleged to have made statements

14

in connection with the institution or marriage or adultery. She is alleged to have disclosed nude photographs of Tornow, a private person. *See Ernst & Young, LLP v. Ryan, LLC*, No. 01-21-00603-CV, 2023 WL 4239350, at *5 (Tex. App.—Houston [1st Dist.] June 29, 2023, pet. denied) (mem. op.) ("[W]e do not blindly accept attempts by appellants to characterize [plaintiff's] claims as implicating protected expression and conduct." (citing *Sloat v. Rathbun*, 513 S.W.3d 500, 504 (Tex. App.—Austin 2015, pet. dism'd))).

In *Merrill v. Curry*, No. 05-19-01229-CV, 2020 WL 6498983 (Tex. App.—Dallas Nov. 5, 2020, no pet.) (mem. op.), the court of appeals considered whether the "intentional display" of a teacher's nude photos by school administrators implicated the TCPA's protections. *Id.* at *3. When a parent informed school administrators that nude photos of a teacher existed online, the administrators summoned the teacher and confronted her with the images and pressured her to resign or else an investigation would result in the school board seeing the pictures. *Id.* at *2. The teacher sued and alleged, among other things, unlawful disclosure of intimate visual material, intrusion upon seclusion, and public disclosure of private facts—the same causes of action that Tornow alleges in the instant suit. *Id.* at *3. The administrators argued that the disclosure of the photos implicated matters of public concern, such as the ability of the plaintiff to be an "effective teacher." *Id.* at *5. The court of appeals disagreed. School districts may have "a legitimate interest

in investigating" whether a teacher has posted sexually explicit content online. *Id.* at *6. However, the "manner in which [the school administrators] conducted a private employment matter," i.e. confronting the teacher with her own nude photos, was not a communication made in connection with a matter of public concern. *Id.* Similarly, here, just because Flatt disclosed nude photos of Tornow after Tornow sent them to her then husband, it does not necessarily follow that Flatt's disclosure is a "communication made in connection with" the subject of marriage or adultery.

To the extent that disclosing Tornow's nude photos can be interpreted as a statement in connection with adultery, and assuming that adultery is a matter of public concern, that disclosure must nonetheless have "relevance to a public audience at the time it was made." *McLane Champions*, 671 S.W.3d at 917. Certain members of the public might take an interest in a private scandal—just as the public might take an interest in a private business transaction involving the Houston Astros—but that does not transform a private affair involving private persons into one of public concern. *See id.* at 919 ("That the subject of the purchase agreement— a professional sports team—is generally of public interest does not render the specific communications at issue relevant to a public audience when they were made."); *Terrell v. Mazaheri*, 676 S.W.3d 116, 126 (Tex. App.—San Antonio 2023, no pet.) (holding that accusation of adultery was not a communication made in

16

connection with a matter of public concern because it did not relate to "any specific unethical conduct" barred by law).

Lastly, we reject Flatt's argument that the alleged disclosure is made in connection with a matter of public concern because the affair is of interest to her local church. *See* TEX. CIV. PRAC. & REM. CODE § 27.001(7)(C) (defining "matter of public concern" to include "a matter of . . . interest to the community"). To support her argument, Flatt relies on *Hadimani v. Hiremath*, No. 14-22-00002-CV, 2023 WL 3596248 (Tex. App.—Houston [14th Dist.] May 23, 2023, no pet.) (mem. op.). In *Hadimani*, a former leader of a social, cultural, and religious non-profit organization was accused of tampering with his organization's elections, actions that were criminal in nature. *Id.* at *6. Our sister court of appeals held that those statements were communications made in connection with a matter of public concern because they were of interest to the members of that organization. *Id.* However, those accusations concerned the leadership of a national organization and implicated criminal activity. *Id.* at *1, *6.

Assuming that Flatt's local church qualifies as a "community" within the meaning of the TCPA, despite no evidence in the record regarding the church's size, Flatt has not demonstrated how the disclosure of nude photos of a church member is in connection with any matter of interest to that community. For example, Flatt submitted no evidence regarding whether her church was investigating or would

17

investigate any alleged affair regarding her then husband or whether Tornow held any leadership position within the church such that any alleged affair would be relevant. *See Hadimani*, 2023 WL 3596248, at *1-2 (in concluding that communications were in connection with matter of interest to community, noting record evidence that nationwide organization was investigating election that was subject of suit, member filed separate suit regarding fraud in election, and organization notified partner that organization would not collaborate with partner if former organization president under investigation was involved). We do not imply that this evidence would be sufficient or necessary. We note only that Flatt, as the movant, bore the initial burden of demonstrating that her alleged disclosure of nude photos was a communication made in connection with a matter of interest to her local church, and she failed to carry that burden.

### 2. Social media message

Flatt argues that the social media message, sent from an account named "home_wreckerwatchout" and using a photo of Tornow, is a warning to the community about Tornow's affair with Flatt's then husband and, therefore, is a communication made in connection with a matter of public concern. For the same reasons that Flatt's alleged disclosure of photos of Tornow is not a communication made in connection with a matter of public concern, we reach the same conclusion with respect to the social media message allegedly sent by Flatt. Even if we interpret

18

the social media account name and profile picture as expressing a message that Tornow is an adulterer for whom the community must watch out, that does not elevate a private affair between private adults into a matter of public concern. *McLane Champions*, 671 S.W.3d at 917 (noting that communication must have "relevance to a public audience *at the time it was made*" (emphasis added)). A party cannot generate interest in a matter after the fact to transform the issue into one of public concern. *Id.*

Having concluded that Tornow's legal action is not based on or in response to Flatt's exercise of the right to petition or the right of free speech, we overrule Flatt's first issue. Accordingly, we need not address Flatt's remaining issues that Tornow failed to establish a prima facie case or that Flatt is entitled to judgment as a matter of law. *See McLane Champions*, 671 S.W.3d at 914, 920 (concluding that TCPA does not apply under first step and ending analysis); *Wayne Dolcefino & Dolcefino Commc'ns, LLC v. Cypress Creek EMS*, 540 S.W.3d 194, 202 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (same).

## Conclusion

We affirm the trial court's denial by operation of law of Flatt's motion to dismiss under the TCPA.

19

Amparo "Amy" Guerra
Justice


Panel consists of Chief Justice Adams and Justices Guerra and Morgan.